# STATE OF MICHIGAN

# COURT OF APPEALS

*In re* ALLEN, Minors.

UNPUBLISHED
August 18, 2015

No. 325946
Berrien Circuit Court
Family Division
LC No. 2013-000008-NA

Before: SAWYER, P.J., and M. J. KELLY and SHAPIRO, JJ.

PER CURIAM.

Respondent-father appeals as of right the trial court order terminating his parental rights to the two minor children under MCL 712A.19b(3)(g) (failure to provide proper care and custody) and (3)(j) (reasonable likelihood that the children will be harmed if returned to the parent's care).[1] We conclude that the trial court erred in finding statutory grounds to terminate respondent's parental rights under MCL 712A.19b(3)(j). However, because it did not err in so finding under MCL 712A.19b(3)(g), and did not err in ruling that termination was in the children's best interests, we affirm.[2]

These proceedings were initiated in January 2013 based upon allegations of abuse and neglect on the part of the children's mother. At the time, mother and respondent were no longer in a dating relationship, lived in separate residences, and shared joint legal and physical custody of the children; respondent had physical custody every week from Monday at 10:00 a.m. until Thursday at 10:00 a.m., with mother having the remainder. On January 18, 2013, while mother had physical custody of the two children at issue (and two other children she had with a different father), a homicide occurred in the residence mother was renting. According to the DHS report, mother's cousin was shot and killed "execution style" during an argument with another man in front of mother and the four children. The cousin's girlfriend was also shot and critically injured. While mother and the children escaped without harm, when police responded, they found the home in "deplorable" condition, with dirty laundry and spoiled food throughout the

---

[1] The children's mother voluntarily released her parental rights to the children. She is not party to this appeal.

[2] The trial court denied petitioner's request to terminate respondent's parental rights under MCL 712A.19b(3)(h).

-1-

home, fecal matter on the floors, and evidence of drug and alcohol abuse. Mother subsequently placed the four children with relatives and was incarcerated on a probation violation for testing positive for cocaine.

On January 25, 2013, the DHS petitioned the trial court to assume jurisdiction over the children and remove them from mother's case. The petitioner named mother, the other father, and respondent as respondents. The bulk of the allegations concerned mother and the events on and soon after January 18, 2013. The only allegation pertaining to respondent stated in part that he had "an extensive criminal history including convictions for possession of marijuana and reckless driving which involved the father attempting to hit the mother with a vehicle. This incident occurred in 2012 and one of the children was present at the time of the incident."

Nonetheless, the DHS identified respondent's barriers to reunification as emotional stability, parenting skills, and substance abuse. Regarding emotional stability, the DHS noted that respondent suffered from bipolar disorder and schizophrenia but was participating in counseling services and taking prescribed medications. It further noted that respondent appeared to be able to care for the children, but wanted respondent to participate in a parenting skills assessment. With regard to substance abuse, the DHS noted that there was no evidence of current drug use, but wanted respondent to participate in a substance abuse assessment given his criminal history. The DHS also noted a secondary concern regarding respondent's history of domestic violence with mother. Respondent's assessing doctor recommended that respondent continue his counseling, participate in parenting classes, and be randomly drug tested, given that respondent tested positive for cocaine at the assessment.

The trial court granted the removal. A combined adjudication trial and dispositional hearing was held on March 12, 2013. Mother admitted to the allegations in the petition and the trial court assumed jurisdiction over the children on that basis. Pursuant to the then-applied one-parent doctrine, see *In re Sanders*, 495 Mich 394, 407-408; 852 NW2d 524 (2014), the trial court also subjected respondent to its dispositional authority and ordered him to comply with a case service plan. The children were ordered to remain in their current placements, although respondent was allowed liberal and frequent parenting time, to be supervised or unsupervised at the DHS's discretion.

On March 13, 2013, respondent was involved in a domestic violence incident with his live-in girlfriend, but apparently no charges were filed. On March 19, 2013, he tested positive for cocaine. At a review hearing held April 2, 2013, the trial court noted that respondent had made "some small steps toward progress" but refused to return the children to his care. Respondent's progress between this hearing and June 24, 2013 was rated as "poor" by the DHS. He missed every scheduled counseling appointment. He started parenting classes, but missed too many sessions and did not complete the course. He attended only 17 of 34 scheduled visitations during this period, even after the DHS modified the parenting time schedule to accommodate respondent's concerns. Eight drug tests were conducted during this time period; respondent tested positive for marijuana all eight times and positive for cocaine seven times. As a result, he was referred to substance abuse counseling but failed to participate. He also moved out of his girlfriend's apartment and failed to obtain permanent housing for himself, living with various friends and family members. During this period, the two children were placed with their paternal grandmother.

Respondent's progress between July 2, 2013 and September 6, 2013 was again rated as "poor." He was incarcerated for approximately 30 days for possession of a controlled substance. He continued to not attend counseling and, due to his minimal contact with the DHS, it was unclear whether he was still taking his prescribed medications. He attended only 5 of 28 scheduled parenting time visits and failed to attend a second parenting class. He failed to participate in substance abuse counseling despite multiple referrals. Finally, he was reported as homeless for all intents and purposes. During this time, the children were removed from their paternal grandmother's home after she reported being unable to care for them. Respondent did not identify any other relative placement options.

On October 9, 2013, respondent tested positive for marijuana and cocaine. On or about October 24, 2013, he was arrested and incarcerated on multiple felony charges, including felon in possession of a firearm, MCL 750.224f, third-degree fleeing and eluding, MCL 750.479a(3), and two counts of resisting and obstructing a police officer, MCL 750.81d(1). He pled guilty as charged on February 21, 2014 and, on March 17, 2014, was sentenced to incarceration with an earliest release date of October 24, 2016 and a latest of April 24, 2021. Respondent remained incarcerated for the rest of these child protective proceedings.

In January 2014, the children were moved into a new, nonrelative foster home. When respondent was transferred to prison, he informed his caseworker that the only service available was substance abuse treatment and that he was on a waiting list for same. The contact between the caseworker and respondent was extremely limited from this point forward and the DHS could not determine what services, if any, respondent was receiving.

On June 27, 2014, the trial court ordered petitioner to proceed with seeking termination of each of the parent's parental rights. In September 2014, following the issuance of the Supreme Court's opinion in *Sanders*, 495 Mich 394, petitioner, recognizing that respondent had never been adjudicated as an unfit parent, filed a supplemental petition requesting the trial court adjudicate respondent and terminate his parental rights at an "initial" dispositional hearing. The trial court did so at a hearing held January 6, 2015.

Respondent argues that the trial court clearly erred in finding that a statutory ground for exercising jurisdiction was proved.[3]

"In Michigan, child protective proceedings comprise two phases: the adjudicative phase and the dispositional phase." *Sanders*, 495 Mich at 404 (citation omitted). "Generally, a court determines whether it can take jurisdiction over the child in the first place during the adjudicative phase." *Id*. Jurisdiction is established pursuant to MCL 712A.2(b). *Id*. As relevant to the

---

[3] We review a trial court's decision whether to exercise jurisdiction for clear error. *In re BZ*, 264 Mich App 286, 295; 690 NW2d 505 (2004). "A finding of fact is clearly erroneous if the reviewing court has a definite and firm conviction that a mistake has been committed, giving due regard to the trial court's special opportunity to observe the witnesses." *In re Moss*, 301 Mich App 76, 80; 836 NW2d 182 (2013).

instant case, that statute provides that a trial court has jurisdiction in proceedings concerning a child under 18 years of age found within the county:

> (1)  Whose parent or other person legally responsible for the care and maintenance of the juvenile, when able to do so, neglects or refuses to provide proper or necessary support, education, medical, surgical, or other care necessary for his or her health or morals, who is subject to a substantial risk of harm to his or her mental well-being, who is abandoned by his or her parents, guardian, or other custodian, or who is without proper custody or guardianship . . . . [or]

> * * *

> (2)  Whose home or environment, by reason of neglect, cruelty, drunkenness, criminality, or depravity on the part of a parent, guardian, nonparent adult, or other custodian, is an unfit place for the juvenile to live in. . . .

To exercise jurisdiction over a child, the trial court is required to find that one of these statutory grounds has been proved by a preponderance of the evidence. *BZ*, 264 Mich App at 295; MCR 3.977(E)(2).  Once jurisdiction has been established, the case moves to the dispositional phase, where the trial court has broad authority to effectuate orders aimed at protecting the welfare of the child, including ordering the parent to comply with the DHS service plan and ordering the termination of the parent's parental rights. *Sanders*, 495 Mich at 404, 406-407.

MCL 712A.2(b)(1) and (2) were both cited by petitioner in the September 2014 amended petition.  At the conclusion of the combined adjudication trial and termination hearing, the trial court concluded that there was sufficient evidence to adjudicate respondent under both of these statutory grounds.  We find no clear error in that decision.  As the trial court correctly found, at the time the amended petition was filed in September 2014, and still at the January 6, 2015 hearing, respondent was incarcerated, with no chance of being released before October 24, 2016.  More important, even before he was incarcerated, respondent had displayed an inability to properly care for the children, as shown by his substantial failure to participate in services or address any of his barriers to reunification, his failure to consistently visit the children, and his failure to obtain housing.  Given this evidence, together with his present incarceration, the trial court did not clearly err in determining, by a preponderance of the evidence, that as of January 6, 2015, respondent had neglected or refused to provide proper care and custody for the children, MCL 712A.2(b)(1), or that his drunkenness and criminality rendered his home environment unfit for the children, MCL 712A.2(b)(2).

In arguing that the trial court's jurisdictional decision was erroneous, respondent focuses on the fact that he requested, sometime during the pendency of these proceedings, that the children be placed with their paternal grandmother, which respondent relies on as proof of his ability to provide proper care and custody.  At the outset, as respondent readily recognizes, the children were placed with their paternal grandmother once during these proceedings.  That placement lasted less than two months because the grandmother reported being unable to care for the children.  At the time the children were removed from the grandmother's home, respondent could not identify any other relatives for possible placement, so the children were returned to their previous foster home.  While it appears that respondent subsequently made a second request

-4-

for the children to be placed with their paternal grandmother, a DHS caseworker testified at the adjudication/termination hearing that this placement was not appropriate because, in part, of the previous unsuccessful placement and because the DHS had conducted a home study and found the grandmother's home to be inappropriate. Based on these facts, there is no support for respondent's claim that his request to have the children placed with their paternal grandmother demonstrated his ability to properly care for the children or his claim that the DHS inappropriately interfered with his right to direct the care of his children. A parent does not provide proper care and custody by placing the children with a relative who is unable to properly care for the children. See *Sanders*, 495 Mich at 421 (noting that state interference with a parent's choice to place his child with relatives is not warranted "[a]s long as the children are provided adequate care" (emphasis added)); *In re Carlene Ward*, 104 Mich App 354, 360; 304 NW2d 844 (1981) (holding that a minor is not without proper custody or guardianship if a parent places the child "in the custody of a relative who properly care[s] for" that child (emphasis added)).

Respondent next argues that the trial court clearly erred in finding that a statutory ground for terminating his parental rights was proved by clear and convincing evidence.[4]

The trial court did not clearly err in finding, by clear and convincing evidence, that termination was warranted under MCL 712A.19b(3)(g). At the time of termination, respondent could not provide proper care and custody of the children due to his incarceration and the only relative placement he offered—the children's paternal grandmother—both stated she could not care for the children and had her home deemed inappropriate by the DHS. More important than his incarceration, however, is the fact that for the 10 months prior to that incarceration, respondent failed to substantially comply with services and, indeed, appeared to regress. He attended less and less visitations with the children, failed nearly every drug test for which he was present, ceased attending counseling, and failed to complete parenting classes or enter substance abuse treatment, despite numerous referrals. Under these facts, the trial court did not clearly err in finding that statutory grounds to terminate respondent's parental rights were established under MCL 712A.19b(3)(g).[5]

---

[4] "This Court reviews for clear error the trial court's ruling that a statutory ground for termination has been established and its ruling that termination is in the children's best interests." *In re Hudson*, 294 Mich App 261, 264; 817 NW2d 115 (2011). "A finding is clearly erroneous if, although there is evidence to support it, this Court is left with a definite and firm conviction that a mistake has been made." *Id*.

[5] Respondent's reliance on *In re Mason*, 486 Mich 142; 782 NW2d 747 (2010), is unpersuasive. There, our Supreme Court ruled that, "[t]he mere present inability to personally care for one's children as a result of incarceration does not constitute grounds for termination." *Id*. at 161. Here, contrary to respondent's argument, the trial court did not terminate respondent's parental rights solely due to his incarceration. Rather, the court found that respondent had failed to benefit from the services offered and accordingly terminated his parental rights. Further, in *Mason*, the government failed to include the respondent-father in the court proceedings, and the

Because only one statutory ground for termination need be proved, *In re Ellis*, 294 Mich App 30, 32; 817 NW2d 111 (2011), we affirm the trial court's ruling that statutory grounds for the termination of respondent's parental rights existed. We note, however, that the trial court erred in finding that grounds also existed under MCL 712A.19b(3)(j). There is no indication that the children would be at a risk of harm if returned to respondent's care. There is no support anywhere in the record for an assertion that respondent ever harmed the children by act or omission. While there are allegations of domestic violence regarding respondent, none of the allegations involve conduct directed toward the children. Indeed, at the outset, the DHS noted that respondent appeared fully capable of caring for the children. As described above, termination in this case was not clearly erroneous due to respondent's failure, for whatever reason, to substantially comply with the offered services. None of those services, and no further actions of respondent, suggest that the children were in danger of harm if in his care. Nonetheless, this error does not require reversal. *Id*.

Lastly, respondent argues that the trial court clearly erred in ruling that termination of his parental rights was in the children's best interests. "Once a statutory ground for termination has been proven, the trial court must find that termination is in the child's best interests before it can terminate parental rights." *In re Olive/Metts*, 297 Mich App 35, 40; 823 NW2d 144 (2012) (citations omitted). See MCL 712A.19b(5). "[W]hether termination of parental rights is in the best interests of the child must be proven by a preponderance of the evidence," *Moss*, 301 Mich App at 90, and the trial court should consider the entire record in making this determination, *In re Trejo*, 462 Mich 341, 356-357; 612 NW2d 407 (2000).

The record contained sufficient evidence to support the court's conclusion that termination of respondent's parental rights was in the children's best interests. At the outset, at the time of the January 6, 2015 termination hearing, the children were 4-1/2 and 3-1/2 years old, and had been in foster care for approximately two years. They were thus in definite need of permanency, stability, and finality. *In re Olive/Metts*, 297 Mich App at 41-42. At the time of termination, respondent was unable to provide those requirements because he had substantially failed to participate in services, had not rectified his barriers to reunification, and was incarcerated on multiple felony charges, with no chance of being released before October 2016. Moreover, the children were thriving together in their foster home, where they were united with one of their half-siblings and their needs were being met. The foster parent had expressed an interest in adopting all of the children. The foster home therefore provided a definite advantage over respondent's home. *Id*. at 42. Finally, while there was minimal evidence regarding respondent's bond with the children, we note that respondent inconsistently visited the children when he was not incarcerated, an action that the caseworker testified had a negative impact on

---

trial court's "ultimate decision in the case was replete with clear factual errors and errors of law that essentially resulted in the termination of respondent's parental rights solely because of his incarceration." *Id*. Such is not the case here. Respondent was afforded the opportunity to appear at all hearings from prison. Accordingly, respondent's case is clearly distinguishable from that of the respondent in *Mason*.

the children. Accordingly, the trial court's conclusion that termination of respondent's parental rights was in the children's best interest was not clearly erroneous.

Affirmed.


/s/ David H. Sawyer
/s/ Michael J. Kelly
/s/ Douglas B. Shapiro